MANU *et al. vs.* NEIL CAMPBELL *et al.*

IN EQUITY.   BEFORE JUDD, C.J.

DECEMBER, 1882.

The Court declines to declare a deed, absolute in form and of record for
fifteen years, to be a trust-deed; there being no fraud by the grantee
and no proof of mutual mistake.

DECISION OF JUDD, C.J.

This is a bill in equity by Manu and Kaohua his wife, Naihe
and Uilani his wife, Kala and Emalia the 2d his wife, Zobedaio
the 1st and Kaanaana his wife, and Zobedaio the 2d, a minor
by his next friend Manu, all of Kohala, against Neil Campbell
and Emalia the 1st, his wife, and Kaua, Ana and Kamaka the
2d, minor children of the said Emalia the 1st and Kamaka the
1st, lately deceased, also of Kohala.

The substantial facts are these: One Inaina, the owner of a
piece of land at Waiapuka, Kohala, Hawaii, twelve acres in
extent, held by him under Royal Patent 4719, made a deed of it
to his nephew Kamaka the first, dated the 3d of February, 1866,
and acknowledged it the same day before Mr. Naiapaakai, then
Circuit Judge.   Immediately on his return to his house, some
miles away from the place of execution, he told the judge who
had accompanied him hither that he meant this land to go to
*the children of his sister,* some of whom were present at his
house on the land living with him, and whom he brought up.
When asked how he came to make a deed that morning to Ka-
maka, he said that he wished to make a disposition of his
property lest Kehuanaoa, who was some relation of his, should
get it, and that he had made the deed at his (Kamaka's)
request, but that it was not according to his own wish.   Mr.
Naiapaakai said he was not prepared with writing materials
there, and Inaina said nothing further.   Kamaka was not
present when the above conversation took place between Inaina
and Naiapaakai.

This land was then being cultivated by the family—the "Kaikamahines" or nieces of Inaina and their husbands, and each had a piece allotted to her. These persons are called "daughters" in some of the testimony, owing to the Hawaiian word being the same for daughter and niece, but Naiapaakai says they were daughters of Inaina's sister, and hence his nieces. Mahoe says also that Kamaka was the son of Inaina's sister.

Inaina died in 1876, having been in ill-health for some years. Shortly before Inaina's death he said that each "Keiki" (or child) was to live on the portion of land allotted to her.

Kamaka had been away on a whaling voyage, but had returned and was present and made no reply to these declarations of Inaina, and afterwards cultivated his allotted portion and did not interfere with the possession of the other children so long as he lived, but, as the head of the family after Inaina's death, settled disputes between them. D. B. Mahoe says that in 1875 or 1876, Kamaka told him that Inaina had deeded the land to him and out of good feeling for his sisters he had divided the land with them, and he pointed out to Mr. Mahoe the different portions set apart.

In 1874 Kamaka mortgaged the entire estate to Mr. Atkins, which is still unreleased in record. He died in 1879.

Do the above recited facts reveal a state of things upon which the Court would be authorized to declare that the conveyance to Kamaka, though absolute in form, is affected by a trust for himself and his sisters, the heirs of deceased's sister?

No fraud is alleged or proven on the part of Kamaka. But it is urged that the acts of both Inaina and Kamaka indicate that the deed was intended to be to Kamaka in trust for all the heirs, and that the conveyance was made to Kamaka alone by mutual mistake of the parties. Is there a mutual mistake shown? Inaina certainly was informed that the deed he had that day made did not express his intentions, but he made no effort to correct it. He labored under the mistake only part of a day. The declarations made by him shortly before his death had no

legal effect to change the disposition of his property already made, and his request in presence of Kamaka that the children should continue to live on their allotted portions of the land is not inconsistent with the deed made, according to the Hawaiian mode of life, where it is extremely common for them to culti- vate and build houses on land in which they have no title, simply at the sufferance of the legal owner. Moreover, it seems to me that Kamaka did acquiesce in Inaina's request, and the nieces (keikis) were not disturbed in their occupation as long as he lived, but this affords no proof that he took the deed under a mistake as to its contents, for he exercised ownership over it by executing a mortgage of it all.

I have not discussed the law as to whether a trust can be created by parol, having come to the conclusion after mature deliberation that none is here shown, for I can find no evidence that Kamaka took the deed under the belief that it was intended to convey the land to the nieces of Inaina, as well as to himself, and there is no proof that Inaina's intention was ever brought home to Kamaka except inferentially from the remarks made by Inaina shortly before his death. This evi- dence is too slight upon which to change the legal effect of an instrument which has been fifteen years of record. Bill dis- missed.

*A. S. Hartwell,* for plaintiffs.

*E. Preston & C. Brown,* for defendants.

Honolulu, December 1st, 1882.